Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this Honorable Court. Please be seated. Welcome. Just by way of introduction, if anybody here is new and doesn't know that we operate on the traffic light system, at the two minute mark you'll get the yellow light. At the red light, if you could just finish your thought, don't go on, don't move on to a different topic and that would be great. This is 19-14046, Juan Delgado v. Bloomberg L.P. et al. Mr. Oliveri, I see that you have reserved some time for rebuttal, but you may proceed. May it please the court, my name is Joe Oliveri on behalf of the plaintiff appellant Juan Jose Rendon Delgado, Mr. Rendon. Your honors, this appeal arises from two primary errors by the district court. First, the district court's novel recognition of an absolute newsworthiness privilege under Florida law. No Florida court has adopted such a privilege. The Florida Supreme Court in the Miami Herald v. Ann case, citing U.S. Supreme Court precedent, rejected any such newsworthiness-based privilege and an absolute neutral reportage privilege is contrary to U.S. Supreme Court precedent that rejects absolute immunity from defamation liability as an untenable construction of the First Amendment. Suppose we disagree with you. Suppose we say that Florida does in fact have a neutral reporting privilege. Do you lose? Absolutely not, your honor. To that point, even if the court were to say that the privilege exists, the district court misapplied the privilege here. The privilege as articulated by the Edwards panel was carefully circumscribed in part because of the breadth of the privilege that that court, according to the Edwards panel, recognized. It only applies to serious charges against a public figure made by a responsible prominent figure or organization that is neutrally and disinterestedly reported. And it also does not apply to statements published or events published for the first time or investigative reporting because the theory undergirding the privilege that the media's privilege to publish about a raging controversy does not support that. Here, your honor, none of those elements are satisfied. The publication was not a neutral, disinterested report. Bloomberg repeatedly bolstered the credibility of the informant, Mr. Sepulveda, who himself was not a prominent, responsible person or organization. Mr. Sepulveda is a convicted, incarcerated fraudster. But the report indicated as much. The report did indicate that he was incarcerated, but that doesn't change anything. So how does that not contribute to the neutral reporting privilege if the publication is in fact acknowledging that their source is in fact a convicted felon? So that would go to the disinterested portion and maybe militate in favor of that. However, for the privilege to apply, it has to be a prominent source. That's a metric for or an indicia of newsworthiness. So the court, the Edwards court, said, look, in that case, it was the National Audubon Society. Here, you have a convicted fraudster. So the privilege doesn't apply, even if it were a disinterested accounting. That said— Surely you're not suggesting that a convicted fraudster can't also be a national figure. It could be a prominent figure, perhaps. Prominent figure. However, it is not a responsible figure. It has to be a responsible, prominent figure or organization. In the case of Edwards, again, the National Audubon Society and their scientists are not only prominent, but also responsible. Here, we have a fraudster, an admitted liar, who Bloomberg was publishing statements with. In any event, Bloomberg elicited these statements for the very first time. They admitted that before publishing their interview with Sepulveda, his allegations had not been published. Bloomberg elicited them for the first time. That was part of their investigative reporting. So here, there was no raging controversy already going on that Bloomberg could have just reported on. So the privilege doesn't apply for that reason. In addition, Mr. Rendon has not been held to be a public figure. The privilege is limited to serious charges against public figures. Here, again, under... If there's an article about someone's kind of work and personality and the nature of this article, doesn't that go pretty far towards showing that this person is a public figure? Judge Grant, I think what you're getting to there is whether someone can be made a public figure, whether a defendant can make an otherwise or previously private person a public figure. Under the Cerro case, under Bayer... Let me give you a citation for that. 397, so second, 926. The defendant cannot, through his own actions, create his defense by making someone a public figure. So here, the mere fact that a previously private figure, and he's private until proven otherwise, is reported on by Bloomberg does not then transform him and, in effect, create, enable Bloomberg to satisfy an element of the privilege through its own work. But I guess what I'm saying is not that the article made him a public figure, but that the kind of discussion of the things that he had done in public life themselves demonstrate that he already was a public figure. I mean, a public figure, I think, has not been a narrow categorization in Supreme Court precedent or otherwise. Courts have interpreted it broadly in various circumstances. However, here, Judge Grant, it is an inherently fact-bound question. And until proven to be a public figure, for the purposes of these proceedings, he is a private figure. It's a fact-bound question that this court certainly should not entertain in the first instance. So you think that's something that the district court would need to decide as a factual matter? In order to transform Mr. Rendon into a public figure, the district court would need to factually find the predicate there. Did he thrust himself generally voluntarily into a raging controversy? But I don't want to lose the forest for the trees, Your Honor, here. Because, again, it was also not a disinterested account. We talked about acknowledging that Mr. Sepulveda was a fraudster. However, Bloomberg published many of his accusations as unqualified facts, not just saying Sepulveda alleged X, Y, Z, but that these facts were, in fact, facts that are true. And they also bolstered Mr. Sepulveda's credibility, saying he appeared authentic. According to sources which we don't identify, his allegations have been corroborated. So Bloomberg was putting its thumb on the scale there and giving credit to Mr. Sepulveda. So, again, for all of these reasons, even if a neutral reporting privilege were recognized, it would not apply on the facts here. Let's say, for purposes of this question, that I agree that there's no neutral reporting privilege, at least in Florida. I think it matters, perhaps, whether your client is a public figure because I'm not certain that actual malice was sufficiently alleged. What's your response to that suggestion? Respectfully, Judge Grant, I don't think this will surprise you to hear me say that. I do think it was more than sufficiently alleged in the complaint. And, again, on a motion to dismiss, we are looking at the complaint and taking the allegations as true. Here, we allege actual malice, many circumstantial evidence that indicate actual malice was published here or that it was published with actual malice here. But, again, the district court did not reach this because they kicked it on the privilege issue. But if your Honor is concerned about actual malice, before Bloomberg published the article, Mr. Rendon had provided them with substantial information showing that, look, he did not rig or engage in electioneering here. He did not work with Sepulveda at all except for on a single solitary web design project. And, thus, everything that Bloomberg said about his work with Sepulveda was false. But do we have any allegations that Bloomberg knew that those allegations were false and published them anyway with reckless disregard for their truth? So, of course, until discovery opens, you don't have internal documents that demonstrate this conclusively. We're in a pre-discovery phase where circumstantial evidence is more than sufficient. You look at the totality of the circumstances here that Bloomberg received information that contradicted what they were going to be publishing, that they refused to retract the article despite being served with a three-page detailed retraction demand. Those are certain categories of circumstantial evidence that together build the wall brick by brick of actual malice. And I think there's plenty of those allegations in the complaint. I'll be citing a few more when I return here. But for present purposes, again, the district court didn't reach it, but the allegations in the complaint viewed in their totality as they must be present. I would submit a compelling case for actual malice here. Let me turn you quickly to the pre-suit notice under Florida law, the Florida Statute 770.01. In particular, counts four through seven. How are those claims not properly dismissed for lack of pre-suit notice? So in this case, Judge Branch, although they were not mentioned in the pre-suit notice, Bloomberg has waived that defense. Bloomberg—I see my time's expired if I may. Yes, please. Thank you, Judge Branch. What Bloomberg did here is they had an opportunity. They moved to dismiss before the statute of limitations expired. They didn't raise a notice defense. They moved to dismiss again, didn't raise it. Only over a year and a half after this case was filed, after the statute of limitations expired, did Bloomberg raise this for the first time. Under Florida law, the Supreme Court case Ingersoll, a defendant that sleeps on its rights, that waits strategically to say, aha, I got you, now it has to be dismissed, waives that defense. Thank you, Your Honor. Thank you. You have five minutes for rebuttal. Mr. McGinn. You may proceed. Good afternoon. May it please the Court. Timothy McGinn of Gunster on behalf of the Bloomberg defendants. Shirley, Bloomberg is the rare defendant to argue with the benefit of an order granting dismissal with prejudice, to argue that that order should be set aside, but nevertheless, here we are. The court below lacked subject matter jurisdiction, and that lack of subject matter jurisdiction compels dismissal under Rule 12b-1 without reaching the merits of the plaintiff's claim. Should the court disagree, of course, and in the alternative, the court should affirm Judge Williams' well-founded order dismissing the plaintiff's claims on their merits. I think given that hierarchy, it makes sense to begin with the jurisdictional issue. The problem this court faces is that the reason for which this matter was originally remanded, to determine whether or not Mr. Rendon had been stripped of his citizenship by the government of Venezuela, is ultimately not a question that has been answered by the district court here. Judge Williams, in her order, concluded that Mr. Rendon had not abandoned his Venezuelan citizenship, but did not engage with the crucial question, the one that was raised by Mr. Rendon's original complaint, which is whether or not he had been disavowed by the Venezuelan government, had been stripped of his citizenship. And that question, and as to that question, Mr. Rendon has not carried his burden of establishing that he remains a citizen of Venezuela. Isn't that finding implicit, though, within the district court's finding regarding that Mr. Rendon is a citizen of Venezuela? In other words, it was teed up to the district court about this issue of divestment. The district court simply said, I've had a hearing. We've looked at all the evidence. The preponderance shows that he's a citizen. Isn't implicit within that a rejection of the divestment argument? It could be, but there's been no engagement with the underlying arguments regarding estoppel, regarding the active state doctrine. There was no analysis given to those issues, those fundamental issues, which are presented to this court effectively for the first time. Well, assume that the district court ruled against you in all of those things, and so you're up against their standard of review. How would you win up against that standard of review? Well, the standard of review is de novo, Your Honor. Any instance in which this court reviews a finding of lack of subject matter jurisdiction is subject to this court's judgment. Well, that is, but the subsidiary findings of fact are reviewed for clear error, are they not? I don't believe so, Your Honor, but to Your Honor's point, I don't think the facts are actually in dispute here. There is a question regarding the import of those facts, but there's been no finding as to whether or not the Venezuelan government attempted to revoke Mr. Rendon's citizenship. In fact, in his operative complaint in paragraph 50, Mr. Rendon continues to say that the government of Venezuela has attempted to disavow itself of him. The dispute is not as to what the government of Venezuela did, but the legal import of those facts. So even if the standard of review were clear error as to the facts, we're not disputing the facts here. The facts are undisputed. It's just a question of what those facts mean and whether a federal court is entitled to look behind those facts and determine what their effectiveness would be under Venezuelan law. I thought that your friends on the other side made an interesting point when they said, what is the active state that you're claiming that we should defer to? What is the specific act that you say this court and the United States need to recognize? It is the disavowal of Mr. Rendon. That is, in fact, specifically alleged by him to be an act of stripping Mr. Rendon of his fundamental right of citizenship in paragraph 50 of his original complaint. I guess I'm saying on what day and what document with what words are you looking at? I don't know that there's any one specific act that we could point to in that fashion, and I would refer your Honor to Justice Marshall's dissent in the Alfred Dunhill case, which notes that while governments do ordinarily act through edicts, through decrees, the acts of a government are entitled to no less weight under the active state doctrine when they act in an irregular fashion. Do you have that in a majority opinion anywhere? I do not, Your Honor, so that is the best authority for that proposition. But we also have different indicia of the revocation of his citizenship, and they are detailed at length in Mr. Rendon's own testimony. He said that one of the indicia of the revocation of his citizenship was the revocation of his passport, the fact that he attempted to renew his passport and was denied that revocation. But have we held in any case that the revocation of a passport without any other facts is enough to indicate that we should be applying the active state doctrine? I know you're going to point to Dunhill, but that was a unique situation, I think, like in a state of war. Is that a material fact that would distinguish this? Well, in the Underhill case, the U.S. Supreme Court pointed to the fact that the denial of issuance of a passport was an active state, in fact, acting on behalf of the state of Venezuela. But there are other indicia here. Mr. Rendon not only had his passport revoked, but then procured for himself from other Latin American governments travel documents specifically for stateless persons. Those were issued to him by the governments of Colombia and Honduras. But surely you would acknowledge those are not acts of Venezuela. They are not, but they are indicia of the fact that Venezuela had revoked his citizenship. So even if we can't identify the specific edict or the specific proclamation by which Mr. Rendon was divested of his citizenship, there are other indications that the Venezuelan government, acting irregularly, had acted in a manner so as to indicate that it had revoked his citizenship. And that is the standard. Have we or the Supreme Court ever applied the active state doctrine where you're unable to identify the specific active state, as you've admitted here that you don't know? I'm not aware of any instance. But the standard is, citing the Recode v. American Metal Company case, when it is made to appear that the foreign government has acted in a given way on the subject matter of the litigation, the details of such action or the merit of the result cannot be questioned, but must be accepted by our courts as a rule for their decision. So we have Mr. Rendon's initial admission that he'd been stripped of his citizenship. We have the corroborating evidence in the form of the travel documents he obtained for stateless persons, but also his attorney's admission to U.S. asylum officials that Mr. Rendon had been declared a noncitizen. Didn't the district court make a finding regarding the Honduras and Colombian documents? No. The magistrate judge said that with regard to Mr. Rendon's travel documents to the United States that he was entitled to amend, but I'm not aware of any holding that said that that was evidence that he had not been stripped of his citizenship. It may speak to the fact that he did not, or it may not be evidence that he did not abandon his citizenship, but it is not, the district court did not speak to whether or not he surrendered his citizenship. So it was not a finding as to that, Judge Luck. There was a finding as to those documents, was there not? Not as to whether or not he'd been divested. Listen to my question. Was there a finding as to those documents? Yes, but not. What was the finding? They were not evidence, as I recall, that he had abandoned his citizenship. Let me read it to you exactly, since you and I are having a communication issue. Testimonial evidence demonstrates that Mr. Rendon's intent in obtaining travel documents from Colombian Honduras was not to declare himself a stateless, but to obtain necessary documentation to legally travel throughout a foreign country. Which is evidence that he did not intend to abandon his citizenship. No, that he was not to declare himself as stateless. And then with abandonment. We don't dispute that he has not declared himself to be stateless. The question is whether the government of Venezuela has divested him of his citizenship. I agree. That is the question. So it's not a finding that weighs on that question of whether or not. It's a finding that those documents don't say anything about whether he's stateless or not. That's what it is. The underlying requirements for obtaining those documents are such that Mr. Rendon could only have applied for them and been eligible for them as a stateless. I know you make that point in your briefs, in your supplemental authority, but the district court made a finding regarding that. It's hard for me to see how that finding is clearly erroneous, which is what we'd have to find in order to ignore it. It's erroneous in the context of the broader circumstances of all the evidence as to Mr. Rendon's citizenship, as to his original admission, as to the procurement of those documents for stateless persons, as to his attorney's admission to U.S. asylum officials that he had been declared a noncitizen, so he is stateless. Within that broader context, it is clearly erroneous. Did you want to take some time to address the neutral reporter privilege or anything about the substantive issues of the case? I did, yes, Your Honor. Thank you for directing me to those. I think there are a couple of points that need to be raised in response to Mr. Rendon's argument. The first is that the only requirements are that the reporter or the journalism entity provide a disinterested account of newsworthy information about matters of public concern. Isn't the first question whether that privilege exists under Florida law? It's clear, Your Honor. There have been no instances, no cases cited by Mr. Rendon in which a Florida court has rejected the application of this privilege on the grounds that it's not recognized by Florida courts. The Ani case, to which Mr. Rendon cites as evidence that it is an impossibility under Florida law, simply doesn't address that point. The Ani case dealt with the question of whether actual malice or negligence would be the appropriate— I know, but the absence of case law and rejection is not really a great argument in favor that it exists under Florida law. Oh, no. There are several cases cited, including Smith v. Taylor, the Hussar case, the Bear case. We have cited the cases that recognize the privilege. I have to say, I'm a little skeptical of the PCA cases, the ones where you cite the lower court order, just understanding how Florida presidential law works. I'm much more interested in those where an appellate court has affirmatively adopted. What is the best case that an appellate court has affirmatively adopted the privilege? The Smith v. Taylor case, which is on point because it's not only a case in which the appellate court held that it was affirming for the reasons specifically stated by the trial court, which included neutral reportage, but it was also a case that involved a private individual and a not particularly reputable source. It was a dispute between the publishers of two newspaper companies involving a brawl between them and between their allies. So that case certainly stands for the proposition that Florida recognizes the neutral reporting privilege. I'm not sure that I agree that Smith v. Taylor certainly doesn't say so expressly, and Smith v. Taylor seemed to be focusing on a couple of issues, but the opinion definitely talks more about whether there was opinion being expressed. In fact, as best I can tell, there's only one sentence that says if the column had included only a reporting of what Sadler had said about the alleged physical confrontation with Smith and included opinion, it would not have been actionable, and that's where it kind of runs off from there. So I'm not sure that this is exactly trumpeting that there is a neutral reporting privilege in Florida. It isn't, but it does recognize in the context of other articles that were the subject of that dispute that it was affirming for the reasons stated in the trial court. Not the last article, which is the subject of a considerable portion of the opinion, but prior to that when it is discussing the affirmance as to other issues. I also do want to address that as to Mr. Rendon, even if this were a privilege that is limited to public figures, there's no need for a remand for further fact-finding. Mr. Rendon has more than alleged he is a public figure at A121. Mr. Rendon receives recognition and numerous international and American awards and honors for his devotion to democracy and humanitarianism. Mr. Rendon alleges he was specifically honored and recognized by the U.S. Congress for his 25 years of devotion to and defense of liberty, democracy, and civil rights for his work in Latin America. There is no doubt that even if Mr. Rendon were correct that this privilege applies only to newsworthy reports about public figures that he would qualify. So that is not a basis for reversing as to the application of neutral reportage. We've also said, and I'll give your friend on the other side a chance to consider this, we've said that public figure determination, quote, is a question of law for the court to decide. That was Michelle versus NYP Holdings, Inc. So under that standard, let's say we agree that it is a question of law. Are we more free to make that conclusion here at the appellate level than we would be if it were a question of fact? I suppose you are, because if it's a question of law, it's de novo review. I don't think it's a requirement, so I don't think you need to make that determination. But since it is a question of law, the court could certainly look at what Mr. Rendon himself has alleged, which more than demonstrates that he is a public figure. To touch briefly on the Section 770 issues, Your Honors expressed concern regarding the broadcast. Mr. Rendon made no argument in any of his briefing as to the broadcast specifically. Section 770 clearly requires a specific identification of both the article or broadcast and the statements therein. But he says that you waived it. I mean, that's what he came up here and said. He says that you waived it because you waived it until after the statute of limitations and raised it in the third motion to dismiss. The 770 Federal Rules of Civil Procedure requires a defendant to affirmatively raise a motion to dismiss, on a motion to dismiss, the failure to satisfy a condition precedent. In fact, as Mr. Rendon himself recognized below and argued below, typically failure to satisfy a condition precedent is addressed on a motion for summary judgment, not on a motion to dismiss. So he's grafting onto the Federal Rules of Civil Procedure a new requirement that a defendant raise for the benefit of a plaintiff that has overlooked it, a new requirement that the defendant identify a condition precedent that hasn't been satisfied, notwithstanding the fact that it's not dispositive or that perhaps there isn't even a sufficient basis for the court to address it on the basis of the complaint. Do you think Florida law governs that question, or under Erie should we look to Federal Procedural Law instead? I think first, you are correct, Your Honor, or your suggestion is correct. Federal Rules of Civil Procedure govern that question. It is a procedural question. But second, to the extent that Florida law does apply, the Ingersoll case was one in which the defendant failed to raise the issue in his answer, not in a motion to dismiss. It was a pleading that he had filed in which he had failed to raise the issue and then had amended and raised it. So even then, there's no holding in Florida requiring that you raise failure to satisfy a condition precedent prior to the running of the statute of limitations in a motion to dismiss. That Ingersoll case is a case involving an answer, not a motion to dismiss. Thank you, Your Honors. Thank you, Mr. Regan. Mr. Oliveri, you have five minutes for rebuttal. Thank you, Your Honors. I'd like to begin where my friend ended. The question of pre-suit notice under Florida law is substantive. That's the Fitchner case citing Menendez, a Florida Supreme Court decision, saying that our pre-suit notice requirements are, in fact, substantive. So Florida law here governs the Ingersoll case and its progeny. Under those cases, a failure to justify Counsel, the issue of the nature of the pre-suit notice may be a matter of substantive law. But whether it's waived under the rules would seem to be an issue, a procedural issue, would it not? Your Honor, it's an interesting dichotomy that you raise. However, I think that here, you're talking about a right to receive pre-suit notice, which is substantive. That is the basis on which a defendant is able to plead. Yes, but when to bring that up in a pleading is very much a procedural issue, is it not? Certainly. When to bring it up in a pleading, I think it would trend toward procedural. However, here, the right extinguishes, essentially, upon expiration of a statute of limitations when a defendant chooses strategically to wait. And that fits with the courts holding the Von Drasek decision that pre-suit notices are not about a gotcha for defendants. Did you forfeit this issue by not raising it in front of the district court? Absolutely not, Your Honor. It's Bedrock law that parties can waive issues, not arguments. We certainly challenged pre-suit notice before the district court here. And the fact that the specifics of a waiver argument, or a estoppel argument, may not have been presented then. I know, but you can't just say the words pre-suit notice and then everything comes under that umbrella. I mean, there's got to be some level of specificity for the arguments you're actually relying on. So a district court can make an intelligent decision about it and then inform us. Again, I think even if there were a question of waiver there, Judge Locke, this does present a pure question of law here on which the right to have Mr. Rendon's constitutional rights, Florida's protection of reputation, turn. And I would submit that would be a miscarriage of justice to say this pure question of law is waived and to kick out a substantial part of his case regarding these other broadcasts. What do we make on the pre-suit notice of the requirement in the statute of specificity? And yet in the complaint, in the retraction letter, there's some partial quotes and a bit of a summary. Whereas in the complaint, you have 19 separate quotes and areas for which you find that there's defamatory conduct. Shouldn't there at least be some matching between the retraction letter and the  I think there's two responses to that, Judge Locke. First and foremost, the purpose of the statute is to put a defendant on notice so he has a meaningful opportunity or it has a meaningful opportunity to retract. Here, our three-page detailed letter did exactly that and Bloomberg responded by saying, we will not revisit our reporting. They stood on the reporting in full. They had the opportunity. But they didn't know the 19 areas for which you are now saying that they're defamatory. You gave some general gist about why you thought the guy was lying and you pointed to a few partial quotes. But that's it, right? To the point about the 19 bullets in the complaint, Your Honor, the defamation claim is both defamation and defamation by implication. Some of those statements help support giving rise to implications. For example, one of the quoted bullets, Your Honor, is that Mr. Sepulveda always insisted on payments in cash. That statement is in itself defamatory, standing alone, and it wouldn't make sense to demand to have to verbatim quote that in a letter. Why wouldn't it be? If the implication is that that is defamatory, wouldn't you have to point out that quote and what the implication is? Well, Your Honor, you did point out the implications in that letter. The verbatim quotation requirement, it sort of doesn't make sense with regard to defamatory implications because you can't quote an implication. But even still, the purpose of the statute is not to require a plaintiff to within, you know, very early on, have a fully developed complaint that they can serve on a defendant and say, Please, you need to retract. Here is our ready for litigation complaint. The purpose of the statute is to avoid litigation. So to impose on a plaintiff in a retraction demand a requirement that they have a fully baked, essentially complaint ready to go and ensures that every statement that he alleges in the complaint is in that retraction demand letter would disserve the purposes of the statute. But isn't the, weren't the allegations completely, completely incomplete, completely lacking for the broadcast interviews? Were the broadcast interviews even mentioned in the notice letter? The broadcast interviews were not in the pre-suit notice. So our position on those broadcasts falls to the waiver argument that defendant slept on its rights and waited too long. The letter was directed fulsomely to the actual article. Thank you. Thank you. Thank you both. We have the case under advisement and court is adjourned.